DAY-ELDER MOTORS CORPORATION, appellant,

*v.*

PERCY K. HEXTER, respondent.

[Decided October 21st, 1920.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Fielder, who filed the following opinion:

"A written contract was entered into between the Day-Elder Motors Corporation of the first part and defendant of the second part dated December 26th, 1916, and was immediately assigned to complainant. For convenience I shall hereafter refer to this contract as having been made by complainant as party of the first part. It recites that complainant was desirous of engaging defendant as its sales manager; that he was desirous of accepting that position and that the parties were desirous of fixing their respective rights and obligations. It then provides that complainant will employ and engage defendant as its sales manager for three years and will pay him for his services as such sales manager a commission of five per cent. on the list price of all motor truck chassis sold during said period. Defendant thereby agreed to act as sales manager for said period and to devote all necessary time to the duties of said position and not to engage in any other motor truck or automobile pleasure car business, or employment, during the life of the contract. In the event that defendant should sell one thousand four hundred chassis within the three-year period, the contract was to be renewed for a further period of five years, upon the same terms and conditions, and in the event that he should sell four thousand chassis within the second period, the contract was to be renewed for a further period of five years upon the same terms and conditions, except that defendant's commission was to be four per cent. on the sales. Complainant agreed to deliver to defendant,

as further payment for his services, five thousand shares of its stock of the par value of $10, upon the following conditions endorsed on the certificate; that the dividends should be paid to defendant so long as he should be employed by complainant; that if defendant should not be entitled to a renewal of his contract, or in the event of a breach of any of the terms thereof by defendant, the stock should revert to complainant; that should defendant perform all the terms and conditions of the contract to be performed by him and sell one thousand four hundred chassis within the first three-year period, a proportionate part of the stock should become his property unconditionally, and if during the second period of five years defendant should sell four thousand chassis, a further proportionate part of the stock should be his; that if defendant should sell ten thousand chassis during the several periods, aggregating thirteen years, and should perform all the terms and conditions of the contract, the balance of the stock should become his absolutely; that should defendant cease to be employed by complainant without any fault on his part, the stock which had not theretofore become his property should immediately become his unconditionally. The contract further provides that all the expenses of sales organization of defendant of every kind and description, including salaries of salesmen, should be paid by defendant, except advertising.

"At the date of the contract complainant had been in business nearly nine months, having its factory located in Newark. Defendant, then a resident of New York City, at once established his office as sales manager in the latter city and proceeded to effect a sales organization, consisting of salesmen, district managers and a general office force. In September, 1918, defendant decided to enter the military service of this country, and on September 21st, 1918, he and complainant entered into a supplemental agreement that from October 1st, 1918, and so long as defendant should remain in the army, his commissions under the contract should be reduced to two per cent.; that the contracts between defendant and his salesmen should be assumed by complainant; that all expenses of the sales organization should be paid by complainant; that defendant should be temporarily relieved from his duties as sales manager, and upon his ceasing

to be in the army, the original contract should be again in effect.

"After making this supplemental agreement complainant moved the sales department and defendant's selling force from New York City to its factory in Newark, and when its new factory building at Irvington, New Jersey, was completed in December, 1918, the sales department was moved there, and has since been conducted from the latter place. Defendant was discharged from the army June 4th, 1919, and a few days afterward, at a conference with the officers of complainant, the subject of continuing the sales department at complainant's factory was discussed and was disapproved by defendant, and on June 18th, 1919, he wrote complainant that he had found an office in the same building in New York City in which he had conducted his business prior to entering the army, and that he was prepared to resume work under his contract. Correspondence and conferences then followed between the parties, in which complainant insisted that defendant should conduct the sales department from its factory, and defendant insisted that his contract did not require him to do so and that he was prepared to locate his office in New York City, and on July 22d, 1919, complainant, solely because of defendant's continued refusal to comply with its direction that the sales department should be located in Irvington, discharged defendant as its sales manager.

"The bill alleges a breach of contract by defendant and it seeks to compel defendant to deliver to complainant the certificate for five thousand shares of stock, complainant tendering itself willing to retransfer to defendant so many shares as the number of chassis sold prior to the termination of the contract, bears to ten thousand. Defendant denies that he has broken the contract, and by counter-claim alleges that he is entitled to the five thousand shares absolutely, and prays that the conditions and limitations under which the same were issued to him, and which are endorsed on the certificate, be canceled and declared void.

"The question is whether under the contract complainant had the right to determine the place from which defendant should conduct the work for which he was engaged or employed, and

whether complainant had the right to terminate the contract because of defendant's refusal to conform with its judgment and instructions in that respect.

"The contract expressly purports to fix the rights and obligations of the parties. It is silent as to the locality from which defendant shall conduct the business for which he was engaged. It does not limit the territory in which he could operate, nor reserve to complainant the slightest right to control any of the actions of the defendant or the manner in which he should perform his part of the contract, nor does it specify how defendant shall conduct his business of sales manager, except that he is to devote all necessary time to the duties of his position, engage in no rival business and bear the expenses of the sales organization. If it was contemplated that the sales department should be located where complainant might from time to time designate, this was a very essential detail which should have been included in the contract, but it would appear that all complainant required of defendant was that he should produce results, leaving him free to devote such of his time as might not be necessary in connection with his duties as sales manager, to any other line of business. This is not compatible with complainant's claim that it could locate him in any place it chose and thereby possibly limit his freedom of action outside the contract. If complainant had the right to compel him to locate his sales office at Irvington, it had the right to designate any other place, no matter how far distant from his home or from the place which he considered best suited for his activities and without regard to the effect such location might have on his sales force or to the possibility that his organization might thereby be broken up. Defendant had a financial interest in the proper location of his office, for his commissions were dependent on his sales, and he was therefore entitled to choose the place at which he thought he could meet with the greatest business success. The complainant could, if it so desired, by fixing his location and from time to time changing it, affect his right to acquire the stock in question, by shifting him to places where it would be impossible for him to sell the necessary number of cars to entitle him to the stock. The fact that at the outset of the contract, the parties

gave it a particular construction as to location of the sales department, is significant and throws light upon what their intention was at that time. *United Box Board Co.* v. *McEwan,* 76 *Atl. Rep. 550, 554.* If it was necessary to have it in or near the factory—if that was the natural location for it—that could have been determined when the contract was made, but defendant's location of it in New York, and its maintenance there for nearly two years, was acquiesced in by complainant. While defendant was in the army and complainant was managing the sales department, it chose to move that department to Irvington, but when he returned he could take his organization where he wished. It was a valuable asset to him, which he was entitled to keep intact, so that when his contract was at an end, he could use it in connection with a new contract with some other automobile company. To compel him to move it whenever and wherever complainant might require might mean its disruption and loss.

"Complainant contends that the contract should be construed to read that defendant 'will act as sales manager for said party of the first part *under its reasonable direction,*' but if that is so, the whole contract is changed, for, beside the right which it now claims to designate the location of the sales agency, such words would also give it the right to specify the territory in which he might work; the number of salesmen he should employ; the hours he should spend at the sales agency; when and how long he should travel, and many other details which it is clear, from a reading of the contract, precludes the raising of such an implied condition.

"The right to give reasonable orders and to discharge from service when such orders are not obeyed, exists in the ordinary and usual relation between master and servant, or where the master has expressly reserved the power to manage or direct the business for which the servant is employed, or where such power must be implied from the nature of the employment, but where one contracts with another to do certain work, and the person so contracting is to do the work according to his own methods and ideas, hiring and discharging his assistants, and not being subject to the control of his employer, except as to results, the contractee is an independent contractor and not subject to

the ordinary rules governing the relations of master and servant. Under the contract in question the defendant appears to be an independent contractor and is governed solely by the contract. *65 L. R. A. 445; 17 L. R. A. (N. S.) 370; Mech. Ag. (2d ed.) §§ 40, 1370; Cl. & Sky. L. Ag. 15,* and cases therein cited.; *Lehigh Coal Co.* v. *Central Railroad Co., 29 N. J. Eq. 252; Mann* v. *Max, 107 Atl. Rep. 417.*

"In support of its contention that the right of complainant to give 'reasonable directions' to defendant must be implied in this contract, complainant cites the following New Jersey cases: *Allen* v. *Aylesworth, 58 N. J. Eq: 349; Walker* v. *John Hancock Insurance Co., 80 N. J. Law 342; Lewis* v. *National Cash Register Co., 84 N. J. Law 598.* But an examination of those cases shows that the contract of employment either expressly provided that the employe should follow or obey the master's instructions and reserved the right to discharge without cause, or that the employer retained control over the actions of the employe, or that the ordinary relationship of master and servant existed.

"Witnesses for complainant gave some testimony tending to show that early in 1918 the defendant agreed to locate the sales department in the new factory, then building at Irvington. The defendant denies this, and I think the following facts corroborate his denial: He was seeking a commission in the army about June 1st, 1918, and at that time he stated to complainant's officers that because his contract specified no location for his sales office, he had the right to conduct his work from New York, Washington or France, provided he gave the necessary time to it and produced results. This led to notice of cancellation of the contract by complainant which was followed by a suit by defendant against complainant and their differences resulted in the supplemental contract of September 21st, 1918. If the location of the sales office had been discussed and was then an issue, as complainant claims, complainant would have insisted upon settling that question by inserting appropriate words in the supplemental contract. There is also a letter in evidence written by complainant to defendant, dated June 20th, 1919, on the subject of moving the office to Irvington, but no

mention is therein made of the alleged agreement on defendant's part. However, whether or not defendant at any time after making the original contract verbally agreed to locate the sales office at Irvington, such agreement is not set up by complainant as a new contract and it was without consideration and is not binding on defendant.

"That defendant gave the necessary time to his duties is evidenced by the fact that one thousand four hundred trucks were sold during the first two years of the contract when that was the number he was to sell in three years. I find that the defendant performed his contract as made with complainant and that the complainant's bill should be dismissed. The contract provides that in the event defendant should cease to be employed by complainant without any fault on his part, the stock in question should become his property unconditionally. The prayer of defendant's counter-claim should be granted and complainant directed to cancel the conditions under which the stock was issued and as endorsed on the certificate."

*Messrs. Pitney, Hardin & Skinner,* for the appellant.

*Messrs. Lum, Tamblyn & Colyer,* for the respondent.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Fielder.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR—13.

*For reversal*—None.